**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **KAHALA FRANCHISING, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) Case No. 14-CV-5877 |
| | ) |
| v. | ) |
| | ) |
| **CONSTANTINO TACCOGNA, TERESA TACCOGNA, AND TRANSORA, INC.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**COMPLAINT**

Plaintiff Kahala Franchising, LLC ("Kahala"), by its attorneys, as and for its Complaint against Defendants states as follows:

**Nature of the Case**

1. This is an action for preliminary and permanent injunctive relief to enjoin Defendants' unlawful misuse and counterfeiting of certain proprietary names and marks owned by Kahala and breach of Defendants' contractual post-expiration obligations. Defendant Constantino Taccogna is a former franchisee under Kahala's Cold Stone Creamery® brand pursuant to written franchise agreements granting a limited license to use certain proprietary names and marks, including federally-registered trademarks, in connection with the operation of authorized Cold Stone Creamery® restaurants in the Chicago area. Notwithstanding termination of those franchise agreements for cause, Defendants continued to provide counterfeit catering services under counterfeit Cold Stone Creamery marks and to otherwise hold themselves out as authorized Cold Stone Creamery® franchisees. As a result of Defendants' actions, Kahala has

been and, unless the injunctive relief sought herein issues, shall continue to be irreparably harmed by Defendants' misconduct.

## Parties

2. Kahala is an Arizona limited liability company with its principal place of business in Scottsdale, Arizona. Kahala is a franchisor of independently owned and operated restaurants serving ice cream, yogurt, cakes, shakes and related products, with thousands of locations nationwide, operating under the name "Cold Stone Creamery®." None of its members are citizens of the State of Illinois nor do they have a principal place of business in the State of Illinois.

3. Upon information and belief, Constantino Taccogna is a citizen and resident of Illinois residing in Park Ridge, Illinois.

4. Upon information and belief, Teresa Taccogna is a citizen and resident of Illinois residing in Park Ridge, Illinois.

5. Upon information and belief, Transora, Inc. ("Transora") is an administratively dissolved Illinois Corporation with its principal place of business formerly in Park Ridge, Illinois. Upon information and belief, Constantino and Teresa Taccogna are the sole shareholders of Transora.

## Jurisdiction and Venue

6. The Court has original subject matter jurisdiction of this civil action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy. The Court also has original subject matter jurisdiction of this

action under 28 U.S.C. § 1332, in that this is a civil action between citizens of different states and wherein the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

7. Venue is proper in this Court under 28 U.S.C. § 1391, in that Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

8. Venue is proper in this Division because Defendants' counterfeiting and infringing activities took place in this Division and because Defendants reside in this Division.

## The Famous CSC Marks and Franchise System

9. To identify the source, origin and sponsorship of authorized COLD STONE CREAMERY® restaurants offering unique ice cream, yogurt and related products and services ("CSC Restaurants"), and to distinguish those products and services from those established, made, offered and sold by others, Kahala, its predecessors and franchising affiliates, and authorized CSC franchisees, have extensively used certain trademarks, service marks, trade names, logos, emblems and indicia of origin, including but not limited to "COLD STONE CREAMERY," "COLD STONE," "CREATIONS COLD STONE ORIGINALS" and "APPLE PIE A LA COLD STONE" (collectively, the "CSC Marks").

10. The CSC Marks are registered on the Principal Register of the United States Patent and Trademark Office. The registrations of the CSC Marks continue in full force and effect.

11. Kahala, as the successor in interest to Cold Stone Creamery, Inc., is authorized to use and to license the below-listed trademark and service mark registrations issued by the United

States Patent and Trademark Office for CSC trademarks and service marks, which have not been canceled, are now and have been valid at all times pertinent, and are in full force and effect.

| TRADEMARK | Registration Number |
|---|---|
| COLD STONE CREAMERY | 3103205 |
| COLD STONE CREAMERY | 3161605 |
| COLD STONE CREAMERY | 2779570 |
| COLD STONE CREAMERY | 2779567 |
| COLD STONE CREAMERY | 2779566 |
| APPLE PIE A LA COLD STONE | 2724383 |
| COLD STONE CREAMERY | 2779569 |
| COLD STONE CREAMERY | 3714496 |
| COLD STONE CREAMERY | 3708156 |
| COLD STONE CREAMERY | 3708030 |
| COLD STONE | 2691919 |
| CREATIONS COLD STONE ORIGINALS | 2789528 |
| COLD STONE CREAMERY | 2542783 |
| COLD STONE CREAMERY | 1968506 |

12. Notice has been given to the public of the registration of the CSC Marks as provided in 15 U.S.C. § 1111 and all legal requirements have been complied with to ensure that Kahala and its authorized licensees remain the exclusive users of the CSC Marks. Kahala, its predecessors and franchising affiliates, and authorized Cold Stone Creamery franchisees, have continuously used the CSC Marks in interstate commerce in connection with the promotion, sale and franchising of CSC Restaurants and the promotion and sale of the products and services they offer throughout the United States and worldwide, since at least the date of their registration.

13. Kahala is the owner and licensor of the CSC Marks for use in connection with the CSC franchise program. Pursuant to franchise agreements entered into by and between Kahala and its authorized and approved franchisees, Kahala has granted franchises to qualified persons

to own and operate CSC Restaurants, together with a limited license to use the CSC Marks in connection therewith, but only in such manner and at such locations as are expressly authorized by Kahala in the franchise agreement.

14. Kahala and its authorized franchisees have extensively advertised and promoted CSC Restaurants and the products and services they offer under the CSC Marks throughout the United States and through various media. As a result of such efforts and the considerable money spent in connection therewith, the products and services offered by Kahala and its authorized franchisees under the CSC Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States.

### The Parties' Franchise Agreements

15. Between 2003 and 2006, Defendant Constantino Taccogna, through various entities, entered into four written franchise agreements with Kahala's predecessor in interest, Cold Stone Creamery, Inc., for CSC Stores 430, 880, 1291 and 1292 located in Chicago, Illinois. Kahala is the assignee of all rights and liabilities of Cold Stone Creamery, Inc. under the franchise agreements.

16. Pursuant to each of these franchise agreements, Constantino Taccogna agreed to unconditionally guarantee and to pay to Kahala and to perform all the obligations and liabilities of the Franchisee in connection with each Franchise Agreement and any other agreement with Kahala.

17. Defendant Constantino Taccogna expressly acknowledged in the Franchise Agreements, Kahala's exclusive rights in the CSC Marks. He agreed, *inter alia*, not to use the CSC Marks or any variation thereof, other than in accordance with the provisions of the Franchise Agreement or to do anything that would harm the good will associated with the Marks.

18. Defendant Constantino Taccogna also expressly acknowledged that CSC's trade secrets and other confidential and proprietary information, processes, materials and rights relating to the development, promotion and operation of their CSC Restaurants were to be kept in the strictest confidence and not disclosed to anyone for any purpose.

19. Defendant Constantino Taccogna agreed that, upon termination of the Franchise Agreements for any reason, he would, *inter alia*, cease to hold himself out as a Cold Stone Creamery franchisee and cease to use the CSC Marks in any form. Defendant also committed to, upon termination of the Franchise Agreements, return to CSC all operating manuals and other confidential and proprietary information and instructions and recipes provided to him in connection with the operation of his former CSC Restaurants and all materials containing the CSC Marks.

20. Defendant Constantino Taccogna also agreed to pay attorneys' fees incurred by Kahala in connection with the enforcement of its rights under the Franchise Agreements.

**Termination of the Franchise Agreements and Prior Litigation**

21. On or about February 28, 2008, Defendants unilaterally abandoned their franchised business for Restaurant 1292. CSC subsequently terminated the Defendants' Franchise Agreement for Restaurant 1292.

22. On or about September 28, 2009, Defendants unilaterally abandoned their franchised business for Restaurant 880. CSC subsequently terminated the Defendants' Franchise Agreement for Restaurant 880.

23. On or about January 19, 2010, Defendants unilaterally abandoned their franchised business for CSC Restaurants 430 and 1291. CSC subsequently terminated the Defendants' Franchise Agreements for Restaurants 430 and 1291.

24. At the time of termination of the Franchise Agreements for Restaurants 430, 880, 1291 and 1292, Defendant Constantino Taccogna owed significant outstanding fees and past due rent to for each of his CSC Restaurants which remained unpaid despite demand from CSC.

25. At the time of termination of the Franchise Agreements for Restaurants 430, 880, 1291 and 1292, there were numerous years remaining on the respective Franchise Agreements and Leases for Restaurants 430, 880, 1291 and 1292.

26. Despite the termination of the Franchise Agreements for Restaurants 430, 880, 1291 and 1292 and demands for compliance with post-termination obligations, Defendant Constantino Taccogna refused to do so.

27. On September 27, 2011, Kahala's predecessor in interest, Cold Stone Creamery, Inc. instituted suit in this Court against, among others, Constantino Taccogna, to enforce its rights under the Franchise Agreements for Restaurants 430, 880, 1291 and 1292, *Cold Stone Creamery, Inc. v. Taccogna et al.*, Case No. 2011-CV-6783 (Conlon, J.). The parties were able to reach a confidential settlement agreement and the case was dismissed without prejudice on or about December 1, 2011.

28. Unbeknownst to Kahala, however, Defendant Constantino Taccogna, and his wife, Teresa, continued to offer catering services through their company, Transora, Inc., in and around the Chicagoland area under the CSC Marks and continued to hold themselves out as authorized Cold Stone Creamery franchisees offering catering services.

29. Upon information and belief, Defendants never severed any of their past catering relationships and continued to cater events under the CSC Marks and to hold themselves out as authorized franchisees.

7

30. On or about July 4, 2014, a Cold Stone Creamery franchisee attended a July 4th celebration at his private club in Chicago, IL One of the food offerings for the event was the popular Cold Stone Creamery ice cream sundae bar.

31. The franchisee was, of course, very familiar with the catering offerings of the Cold Stone Creamery brand. The franchisee noticed that although the signs and containers for the sundae bar all bore the CSC Marks and the offering purported to be an authorized CSC sundae bar, the products being offered under the CSC Marks were not CSC products. The franchisee observed that the ice cream being served was of inferior quality and not CSC ice cream. The franchisee further observed that other items such as the waffle bowls were likewise not CSC products and of inferior quality.

32. The franchisee approached the man staffing the purported Cold Stone Creamery sundae bar and learned his name was Dean or Dino Taccogna.

33. Further investigation reveals that Defendants Constantino and Teresa Taccogna, individually and through their company, Transora, have provided catering services, including the Cold Stone Creamery sundae bar, repeatedly to this club over several years. At all times Defendants, held themselves out as authorized CSC franchisees offering authentic CSC products.

34. Upon information and belief, Defendants have held themselves out as authorized CSC franchisees offering authentic CSC products to other catering clients throughout the Chicagoland area.

35. The acts of defendants are calculated to confuse and to deceive the public and are performed with full knowledge of Kahala's rights.

36. Defendants are not associated, affiliated or connected with, or endorsed or sanctioned by Kahala yet hold themselves out as being so.

8

37. Kahala has never authorized or consented in any way to the use by Defendants of the CSC Marks or copies thereof.

38. The use by Defendants of the CSC Marks or copies thereof on Defendants' products is likely and has caused consumers, the public and the trade to believe erroneously that the goods and products sold by defendants emanate or originate from Kahala, or that said items are authorized, sponsored, or approved by Kahala, even though they are not.

39. This confusion causes irreparable harm to Kahala and weakens the distinctive quality of the CSC Marks.

40. By using counterfeits and infringements of the CSC Marks on Defendants' goods and services, Defendants are trading on the goodwill and reputation of CSC and creating the false impression that defendants' goods are legitimate Cold Stone Creamery products.

41. Defendants have been unjustly enriched by illegally using and misappropriating Kahala's intellectual property for Defendants' own financial gain.

42. Furthermore, defendants have unfairly benefited and profited from Kahala's outstanding reputation for high quality products and its significant advertising and promotion of Cold Stone Creamery products and the CSC Marks.

43. Kahala has had no control over the nature and quality of the products and services sold by Defendants bearing counterfeits and infringements of the CSC Marks.

44. Among other things, Defendants' distribution, sale, offers of sale, promotion and advertisement of its products has reflected adversely on Kahala as the believed source of origin thereof, hampered continuing efforts by Kahala to protect its outstanding reputation for high quality, originality and distinctive goods, and tarnished the goodwill and demand for genuine Cold Stone Creamery products and, upon information and belief, will continue to do so.

9

45. Defendants have acted with reckless disregard for Kahala's rights.

46. Defendants have willfully and maliciously engaged in their counterfeiting and infringing activities.

47. As a result of the foregoing, this case constitutes an exceptional case under 15 U.S.C. § 1117(a) or a case of intentional counterfeiting under 15 U.S.C. § 1117(b).

48. Kahala has suffered irreparable harm and damages as a result of the acts of Defendants in an amount thus far not determined.

49. The injuries and damages sustained by Kahala have been directly and proximately caused by Defendants' wrongful advertisement, promotion, distribution, sale and offers of sale of their goods bearing infringements or counterfeits of the CSC Marks.

50. Kahala has no adequate remedy at law such that damages alone cannot fully compensate CSC for defendants' misconduct.

51. Unless enjoined by the Court, Defendants will continue to counterfeit and infringe the CSC Marks and to exploit and use Kahala's confidential information learned while CSC franchisees – all to Kahala's irreparable injury. This threat of future injury to Kahala's business identity, goodwill and reputation requires injunctive relief to prevent Defendants' continued infringement and counterfeiting and to ameliorate and mitigate CSC's injuries.

**First Claim for Relief -Trademark Counterfeiting**

52. Plaintiff repeats and realleges ¶¶ 1 through 51 of the Complaint as and for this ¶52 as if fully set forth herein.

53. Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the CSC Marks on goods and services covered by registrations for the CSC Marks.

54. Defendants have used these spurious designations knowing they are counterfeit in connection with the advertisement, promotion, sale, offering for sale and distribution of goods.

55. Defendants' use of the CSC Marks to advertise, promote, offer for sale, distribute and sell Defendants' catering services was and is without the consent of Kahala.

56. Defendants' unauthorized use of the CSC Marks as set forth above constitutes use in interstate commerce of a counterfeit, copy, or colorable imitation of the CSC Marks and is likely to: (a) cause confusion, mistake and deception; (b) cause the public to believe that Defendants' products and services are the same as Kahala's or that Defendants are authorized, sponsored or approved by Kahala or that Defendants are affiliated, connected or associated with or in some way related to Kahala; and (c) result in Defendants unfairly benefiting from Kahala's advertising and promotion and profiting from the reputation of Kahala and its CSC Marks all to the substantial and irreparable injury of the public, Kahala and the CSC Marks and the substantial goodwill represented thereby.

57. Defendants' acts as aforesaid constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

58. Defendants' acts are both willful and malicious.

59. By reason of the foregoing, defendants are liable to Kahala for: (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at Kahala's election, an amount representing three (3)

times Kahala's damage or Defendants' illicit profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

### Second Claim for Relief—Trademark Infringement

60. Plaintiff repeats and realleges ¶¶ 1 through 59 of the Complaint as and for this ¶60 as if fully set forth herein.

61. Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the CSC Marks, and are likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. §1114.

62. As a direct and proximate result of Defendants' infringement, Kahala has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

63. Kahala has no adequate remedy at law because the CSC Marks are unique and represent to the public Kahala's identity, reputation, and goodwill, such that damages alone cannot fully compensate Kahala for Defendants' misconduct.

64. Unless enjoined by the Court, Defendants will continue to use and infringe the CSC Marks, to Kahala's irreparable injury. This threat of future injury to Kahala's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of the CSC Marks, and to ameliorate and mitigate Kahala's injuries.

### Third Claim for Relief —Unfair Competition

65. Plaintiff repeats and realleges ¶¶ 1 through 64 of the Complaint as and for this ¶65 as if fully set forth herein.

66. Defendants' acts, practices, and conduct constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C § 1125(a).

67. As a direct and proximate result of defendant's infringement, Kahala has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

68. Kahala has no adequate remedy at law because the CSC Marks are unique and represent to the public Kahala's identity, reputation, and goodwill, such that damages alone cannot fully compensate Kahala for Defendants' misconduct.

69. Unless enjoined by the Court, Defendants will continue to use and infringe the CSC Marks, to Kahala's irreparable injury. This threat of future injury to Kahala's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of the CSC Marks, and to ameliorate and mitigate Kahala's injuries.

### **Prayer for Relief**

WHEREFORE, Kahala respectfully prays for the following relief against Defendants:

A. A preliminary and permanent injunction enjoining Defendants, their agents, servants and employees, and those people in active concert or participation with them from:

1. Using the CSC Marks or any trademark, service mark, logo or trade name that is confusingly similar to any of the CSC Marks;

2. Otherwise infringing the CSC Marks or using any similar designation, alone or in combination with any other components;

3. Passing off any of their products or services as those of CSC or CSC authorized franchisees;

4. Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with CSC and its franchisees or any of CSC products or services; and

5. Unfairly competing with CSC or its franchisees, in any manner.

B.  An order pursuant to 15 U.S.C. § 1118 that all labels, signs, prints, packages, wrappers, receptacles, logo items, and advertisements in the possession of Defendants, their agents, servants and employees, and those people in active concert or participation with them bearing any of the CSC Marks, and all plates, molds, and other means of making the same, if any, be delivered to CSC at Defendants' cost;

C.  That Defendants be required to promptly eliminate all advertising under the CSC Marks or any other confusingly similar designations from all media including, but not limited to, newspapers, flyers, coupons, promotions, signs, telephone books, telephone directory assistance listings and mass mailings, all at Defendants' cost;

D.  That Defendants be required to promptly provide a customer list to Kahala for each and every service offered under the CSC Marks, all at Defendants' cost;

E.  That Defendants be required to file with the Court and to serve upon Plaintiff's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which he has complied with such injunction or order;

F.  That Defendants pay to Plaintiff such damages as Plaintiff has sustained by reason of said trademark counterfeiting, infringement and unfair competition; and that, because of the willful nature of said infringement, the Court enter judgment for plaintiff for three times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

G.      That Defendants pay to Kahala: (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at Kahala's election, an amount representing three (3) times Kahala's damage or Defendants' illicit profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

H.      An award of costs and expenses, including reasonable attorneys' fees incurred by Plaintiffs in connection with this action as provided for by the Franchise Agreement and statute; and

I.      Such other and further relief as the Court deems just and proper.


Dated: July 31, 2014                                     Respectfully submitted,

                                                        **KAHALA FRANCHISING, LLC**

                                                        By: /s/ Alice A. Kelly
                                                        Alice A. Kelly (Reg. No. 6281897)
                                                        Aaron H. Midler (Reg. No. 6306611)
                                                        NORVELL IP llc
                                                        1776 Ash Street
                                                        Northfield, Illinois 60093
                                                        Telephone: (888) 315-0732
                                                        Facsimile: (312) 268-5063